7 Cal.App.4th 1008 (1992)
9 Cal. Rptr.2d 331
DEBORAH DAVIS, Petitioner,
v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent; JEANNETTE WILLIAMS, Real Party in Interest.
Docket No. F016770.
Court of Appeals of California, Fifth District.
June 26, 1992.
*1010 COUNSEL
Chain, Younger, Lemucchi, Cohn & Stiles and Heather L. Nicoll for Petitioner.
*1011 No appearance for Respondent.
Clifford, Jenkins & Brown and Richard G. Zimmer for Real Party in Interest.
OPINION
BUCKLEY, J.
In this opinion, we hold that the mere act of filing a personal injury action asking for general damages for pain and suffering does not tender the plaintiff's mental condition so as to make discoverable postinjury psychotherapeutic records.

THE CASE BELOW
On March 11, 1991, petitioner and her husband filed a complaint for damages for personal injuries suffered in an automobile accident on March 16, 1990. Real party in interest, the operator of a vehicle, was the only named defendant. Petitioner claimed compensatory damages for wage loss, hospital and medical expenses, general damage and loss of earning capacity. Real party answered, asserting a failure to state a cause of action, contributory fault, assumption of the risk, failure to mitigate damages, Civil Code sections 1431 and 1431.2 and the statute of limitations.
After receiving answers to interrogatories in July 1991, real party sent a subpoena duces tecum to the custodian of records for Cedar Women's Center, seeking petitioner's treatment records. In August 1991, petitioner filed a motion to quash the subpoena and for a protective order to limit the discovery to directly relevant medical history of a 10-year period prior to the accident. Real party then filed opposition to which petitioner replied. The court denied the motion to quash the subpoena, limited discovery to the last 10 years and directed that the records be confidential and used for this case only.[1] Although the court did not explain its ruling, at the hearing on the motion, the court announced its tentative decision as follows:
"All right. The plaintiff's motion to quash, the tentative is to deny. The Court is of the opinion that the discovery made to admissible evidence, the Court feels it should be restricted as to time and confidentiality."[2]
Subsequently, upon application by petitioner, respondent court stayed enforcement of its order until either it vacated its previous order denying the *1012 motion to quash or 10 days after this court denies the instant petition for writ of mandate, which immediately followed.

DISCUSSION
It is the contention of real party (and was at the hearing on the motion to quash) that the Cedar Women's Center records are related to the subject accident in the following regard: pain and suffering, emotional distress, driving under the influence, withdrawal symptoms, prior or subsequent falls, medical history and admissions or impeachment.[3]
In her answers to interrogatories, petitioner had essentially denied there were any contributing factors to her injuries beyond the accident and had not listed Cedar Women's Center as a treating facility.
The subpoena duces tecum requested the following records:
"ANY AND ALL RECORDS, INCLUDING MEDICAL, HOSPITAL OR OTHERWISE, RELATING TO THE CARE AND TREATMENT OF THE PLAINTIFF, DEBORAH DAVIS, INCLUDING HISTORIES, PROGRESS RECORDS, PROGNOSIS, NURSES NOTES, ACCOUNTING RECORDS, DOCTORS ORDERS, REPORTS, DIAGNOSES, INCLUDING INVENTORIES AND CHECK-IN DOCUMENTS, ADMITTANCE, EMERGENCY ROOM, INPATIENT AND OUTPATIENT RECORDS, INCLUDING ANY AND ALL X-RAYS AND REPORTS OF ANY KIND AND NATURE FROM THE BEGINNING OF TIME TO DATE."
Respondent's order, in effect, permits discovery over a claim of privilege. (1) To avoid the possibility of irreparable injury and to provide an adequate remedy, this court will entertain a petition for extraordinary relief. (Roberts v. Superior Court (1973) 9 Cal.3d 330, 336 [107 Cal. Rptr. 309, 508 P.2d 309].)
Mandate is an appropriate remedy to prevent improper discovery. (Roberts v. Superior Court, supra, 9 Cal.3d 330, 336; Lewis v. Superior Court (1953) 118 Cal. App.2d 770, 775 [258 P.2d 1084].) This court's standard of review is abuse of discretion; petitioner is entitled to relief if petitioner shows that upon the undisputed facts, the law establishes petitioner's right to the relief sought below. (Robbins v. Superior Court (1985) 38 Cal.3d 199, 205 [211 Cal. Rptr. 398, 695 P.2d 695].)
*1013 Petitioner's challenge is twofold. She contends that the superior court's order was improvident because it violated her statutory psychotherapist-patient privilege (Evid. Code, § 1014) and invaded her constitutional right of privacy.
Real party asserts petitioner's failure to establish in the superior court a foundation that a psychotherapist-patient relationship existed precludes consideration of the privilege and the failure to make a showing that petitioner's right of privacy is infringed is fatal to the invocation of that right in the trial court (and here).
As we will discuss, the statutory privilege and the constitutional privacy right are both interrelated and separate. (Cf. In re Lifschutz, supra, 2 Cal.3d 415; Heda v. Superior Court (1990) 225 Cal. App.3d 525, 528, fn. 1 [275 Cal. Rptr. 136].) The psychotherapist-patient privilege is one aspect of the right of privacy, but it and any exceptions are subject to constitutional standards. (Cutter v. Brownbridge (1986) 183 Cal. App.3d 836, 845-846 [228 Cal. Rptr. 545].) Because resolution of the issue regarding privilege in favor of real party would not necessarily be dispositive of the issue of privacy, we shall first address the broader privacy issue. (Heda, supra, at p. 528, fn. 1.) In so doing, we conclude that the court's order of disclosure violated petitioner's right of privacy.

Right of Privacy
In her motion to quash, petitioner, by declaration of counsel, stated that the basis of the motion was, inter alia, an assertion of her right of privacy.
Article I, section 1 of the California Constitution (added Nov. 5, 1974) provides in pertinent part that all people are by nature free and independent and have inalienable rights, among which is pursuing and obtaining privacy. Before the enactment of this provision, our Supreme Court had recognized that communications with a psychotherapist were within the zone of privacy.[4] (In re Lifschutz, supra, 2 Cal.3d at pp. 431-432.) (2) The enactment of the constitutional provision indicates an intent to expand the right of privacy previously recognized by various court decisions. (Porten v. University of San Francisco (1976) 64 Cal. App.3d 825, 829 [134 Cal. Rptr. 839].)
*1014 The constitutional privilege has been held to operate even though a statutory privilege does not protect the matter in question. (Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652, 656 [125 Cal. Rptr. 553, 542 P.2d 977]; see 2 Hogan, Modern Cal. Discovery (4th ed. 1988) Privilege, § 12.28, pp. 182-183.) One court has treated it as independent of a related statutory privilege. (Heda v. Superior Court, supra, 225 Cal. App.3d 525, 528, fn. 1, in which the court expressly bypassed an opportunity to apply and construe the narrower statutory physician-patient privilege and an exception thereto, and instead determined the constitutional issue.) The constitutional provision is self-executing and needs no legislation to create a legal and enforceable right of privacy for every Californian. (Cutter v. Brownbridge, supra, 183 Cal. App.3d at p. 842.)
Real party contends: (1) petitioner waived the right to assert the constitutional right of privacy by filing the lawsuit, and (2) that petitioner failed to meet her threshold burden of establishing that the particular records sought were within a constitutionally protected zone of privacy.

Waiver

Generally
(3) In determining whether one has waived the right of privacy by bringing suit, our Supreme Court has noted that although there may be an implicit partial waiver, the scope of such waiver must be narrowly, rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by fear of exposure of private activities. (Vinson v. Superior Court (1987) 43 Cal.3d 833, 842 [239 Cal. Rptr. 292, 740 P.2d 404], quoting Britt v. Superior Court (1978) 20 Cal.3d 844, 859 [143 Cal. Rptr. 695, 574 P.2d 766].) An implicit waiver of a party's constitutional rights encompasses only discovery directly relevant to the plaintiff's claim and essential to the fair resolution of the lawsuit. (Vinson v. Superior Court, supra, 43 Cal.3d at p. 842.) There must be a compelling and opposing state interest justifying the discovery. (Britt v. Superior Court, supra, 20 Cal.3d at p. 855.) Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy. (Binder v. Superior Court (1987) 196 Cal. App.3d 893, 900 [242 Cal. Rptr. 231].) The scope of any disclosure must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner. (Id. at pp. 900-901.)

*1015 Direct Relevance

(4) Petitioner filed a garden-variety motor vehicle personal injury action alleging general damages, loss of earning capacity, wage loss and other compensatory damages. Real party argues that merely by filing such a suit, petitioner tendered an issue as to her present mental and emotional condition. Real party asserts that because as a matter of right a plaintiff in a personal injury action may pursue damages for noneconomic damages such as pain, suffering, mental suffering and emotional distress even though a specific cause of action for emotional distress is not alleged, petitioner's mental condition has been placed in issue and is relevant.[5] To the extent that real party's argument is set forth as a general proposition, we disagree.
In determining whether and to what degree a waiver was effected by the filing of the action, we must identify the issue tendered. In a supplemental declaration in support of the motion to quash, counsel for petitioner expressly states:
"The plaintiff, Deborah Davis, makes no claim for damages for `mental and emotional distress' apart from her claim for damages for pain and suffering associated with the injuries sustained in the subject automobile accident....
".... .... .... .... .... .... ....
"The Cedar Women's Center provided no treatment to plaintiff in connection with the injuries for which she seeks compensation in this personal injury action."
By so stating, petitioner has thus limited her claim for emotional distress to pain and suffering associated with the injuries she sustained to her left wrist, upper arm, shoulder, neck, back and right knee.
We recognize that an allegation of pain and suffering from a physical injury permits a party to recover for a range of emotional injuries. Pain and *1016 suffering have included physical pain, fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror and ordeal. (Capelouto v. Kaiser Foundation Hospitals (1972) 7 Cal.3d 889, 892-893 [103 Cal. Rptr. 856, 500 P.2d 880].) However, our Supreme Court has recognized that the extent to which a mental component may be in issue in a particular suit depends upon the facts of a particular case. (Cf. Roberts v. Superior Court, supra, 9 Cal.3d 330, 338-339.)
In Roberts v. Superior Court, supra, 9 Cal.3d 330, plaintiff was injured in an automobile accident, precipitating a personal injury action in which she alleged she was "`rendered sick, sore, lame and disabled'" as a result of defendant's negligence. In the course of general discovery, it was revealed that plaintiff, in the past, had received psychiatric treatment. Arguing that plaintiff's assertion that she was "sore" and "disabled" included a mental component as well as the physical, defendant sought disclosure of the psychiatric records on the basis of direct relevance. In disallowing discovery of the records, our Supreme Court stated:
"We must of course recognize that any physical injury is likely to have a `mental component' in the form of the pain suffered by the injured person, at least insofar as he is conscious of the physical injury. Presumably, the perception of pain from a particular injury will vary among individuals. Thus, in every lawsuit involving personal injuries, a mental component may be said to be at issue, in that limited sense at least. However, to allow discovery of past psychiatric treatment merely to ascertain whether the patient's past condition may have decreased his tolerance to pain or whether the patient may have discussed with his psychotherapist complaints similar to those to be litigated, would defeat the purpose of the privilege established by [Evidence Code] section 1014...." (Roberts v. Superior Court, supra, 9 Cal.3d at p. 339.)
Real party distinguishes Roberts as involving records sought with no significant relevance claimed to a mental or emotional condition and as involving records pertaining to consultation prior to the accident. She argues that here, postinjury records are sought which are relevant to mental and emotional injuries plaintiff claims to have experienced following the accident.
Although diligent search has revealed no California cases presenting the same facts and issue as presented here, it has been held elsewhere that the filing of a personal injury action seeking damages for pain and suffering does not, ipso facto, place mental condition in issue as part of the claim. (Tylitzki v. Triple X Service, Inc. (1970) 126 Ill. App.2d 144 [261 N.E.2d 533, *1017 535-536].) In so holding, the appellate court affirmed the trial court's order quashing the subpoena which had been issued to compel the plaintiff's psychiatrist to testify. The appellate court stated, "The privilege is too important to be brushed aside when the mental condition of the plaintiff may be only peripherally involved." (Id., 261 N.E.2d at p. 536.)
In the cases we have reviewed which find direct relevance, all appear to include specific averments or reasonable interpretations drawn from the pleading which clearly place mental condition in issue. (See, e.g., In re Lifshutz, supra, 2 Cal.3d 415; Britt v. Superior Court, supra, 20 Cal.3d 844; Vinson v. Superior Court, supra, 43 Cal.3d 833; Navajo Express v. Superior Court (1986) 186 Cal. App.3d 981 [231 Cal. Rptr. 165].) As noted in Simek v. Superior Court (1981) 117 Cal. App.3d 169, 174 [172 Cal. Rptr. 564]:
"Thus, the patient-litigant exception has been applied, typically, to personal injury cases in which the plaintiff tenders his physical or emotional condition as an issue by seeking damages for what he contends are physical or emotional injuries."
The burden is on the party seeking the constitutionally protected information to establish direct relevance. (Harris v. Superior Court (1992) 3 Cal. App.4th 661, 665 [4 Cal. Rptr.2d 564].) Real party seeks a broad range of materials. Here, the materials sought must be directly relevant to the issue of pain and suffering associated with the physical injuries petitioner sustained. By limiting her claim for emotional distress to pain and suffering associated with stated physical injuries, and by explaining that the center provided no treatment in connection with the injuries for which compensation was sought, petitioner established that it is not reasonably probable that the records are directly relevant to the condition she placed in issue. (Cf. In re Lifschutz, supra, 2 Cal.3d 415, 436-437.)
Real party has not countered with any showing of direct relevance; rather, real party only speculates that in the records requested there could be material which might be relevant to various issues in the action, such as the nature and extent of emotional distress suffered, causation of the accident and petitioner's condition at the time of the accident. Mere speculation as to the possibility that some portion of the records might be relevant to some substantive issue does not suffice. (Cf. In re Lifschutz, supra, 2 Cal.3d 415, 435; Mendez v. Superior Court (1988) 206 Cal. App.3d 557, 570-571 [253 Cal. Rptr. 731]; Huelter v. Superior Court (1978) 87 Cal. App.3d 544, 548-549 [151 Cal. Rptr. 138].) We are mindful of the scope of the materials requested. Real party seeks any and all medical or hospital records relating to the care and treatment of petitioner to date; real party has made no attempt *1018 to limit the request to specific matters directly relevant to petitioner's pain and suffering from the physical injuries. Petitioner has established that the records do not concern treatment for the injuries for which she claims damages. The request is thus overbroad because it necessarily encompasses privileged material which is not relevant to the lawsuit. (Cf. Boler v. Superior Court (1987) 201 Cal. App.3d 467, 474 [247 Cal. Rptr. 185].)
Petitioner here has clearly limited her claim to pain and suffering associated with the injuries to her body. Nothing prevents real party from seeking records directly relevant to such claim by a narrowly drawn discovery request. If such a request were made, the trial court could then evaluate the respective interests of the parties and the necessity and appropriate extent of disclosure according to the standards set forth hereinabove.[6]
The trial court's limiting disclosure to a 10-year period and providing for confidentiality did not cure the constitutional defect in its ruling. (Boler v. Superior Court, supra, 201 Cal. App.3d 467, 475.)

Foundation
(5) Although it is well settled that in order to assert a psychotherapist-patient privilege (or any privilege), one must first establish that the relationship exists (see, e.g., Delaney v. Superior Court (1990) 50 Cal.3d 785 [268 Cal. Rptr. 753, 789 P.2d 934]; Mize v. Atchison, T. & S.F. Ry. Co. (1975) 46 Cal. App.3d 436 [120 Cal. Rptr. 787]; Mahoney v. Superior Court (1983) 142 Cal. App.3d 937 [191 Cal. Rptr. 425]), we can find no case which sets forth, or even discusses, the requisite showing for assertion of a right of privacy. Moreover, we can find no case which has even discussed whether, in fact, any threshold showing must be made.
In many cases, it simply is not clear what foundational showing was made; the nature of the material sought seems sufficient to invoke the privacy privilege. (See Britt v. Superior Court, supra, 20 Cal.3d 844 [request for detailed information regarding associational activities; unclear as to the medical information]; United Farm Workers of America v. Superior Court (1985) 170 Cal. App.3d 391 [216 Cal. Rptr. 469] [lists of union members and *1019 strikers were to be subjected to an in camera procedure once shown to be directly relevant]; Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652 [125 Cal. Rptr. 553, 542 P.2d 977] [mere request for confidential information from bank customers]; Hofmann Corp. v. Superior Court (1985) 172 Cal. App.3d 357 [218 Cal. Rptr. 355] [request for production of a customer list]; El Dorado Savings & Loan Assn. v. Superior Court (1987) 190 Cal. App.3d 342 [235 Cal. Rptr. 303] [personnel file in an employment discrimination action].)
(6) Rather than engage in discussion about the necessity of a threshold showing to assert the right of privacy, we shall simply assume that some showing is required. Borrowing from Justice Stewart's famous test for obscenity, "I know it when I see it" (Jacobellis v. Ohio (1964) 378 U.S. 184, 197 [12 L.Ed.2d 793, 803-804, 84 S.Ct. 1676]), we then conclude that petitioner did establish that the attempt to obtain the Cedar Women's Center records breached her right of privacy.
It has been held that a person's medical profile is an area of privacy which cannot be compromised except upon good cause. (Board of Medical Quality Assurance v. Gherardini (1979) 93 Cal. App.3d 669, 678, 681 [156 Cal. Rptr. 55].) We may also safely conclude that the right of privacy extends to the details of one's personal life. (Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, 656.)
The motion to quash was precipitated by a subpoena duces tecum which requested all records, medical or otherwise, related to the care and treatment of petitioner. One cannot seriously dispute that care and treatment generally are construed to refer to medical or psychotherapeutic assistance. Moreover, the subpoena was issued pursuant to Code of Civil Procedure section 1985.3 which refers to records pertaining to consumers and maintained by "witness[es]." A specific list of "witness[es]" is set forth in Code of Civil Procedure section 1985.3, subdivision (a)(1): "physician, chiropractor, veterinarian, veterinary hospital, veterinary clinic, pharmacist, pharmacy, hospital, state or national bank, state or federal association (as defined in Section 5102 of the Financial Code), state or federal credit union, trust company, anyone author- ized by this state to make or arrange loans that are secured by real property, security brokerage firm, insurance company, title insurance company, underwritten title company, escrow agent licensed pursuant to Division 6 (commencing with Section 17000) of the Financial Code or exempt from licensure pursuant to Section 17006 of the Financial Code, attorney, accountant, institution of the Farm Credit System, as specified in Section 2002 of Title 12 of the United States Code, or telephone corporation which is a public utility, as defined in Section 216 of the Public Utilities Code, or psychotherapist, as defined in Section 1010 of the Evidence Code, or a private or public preschool, elementary school, or secondary school."
*1020 As is apparent, all of the "witness[es]" listed above deal with information traditionally viewed as confidential. (See, e.g., Board of Medical Quality Assurance v. Gherardini, supra, 93 Cal. App.3d 669; Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652; Johnson v. Board of Education (1986) 179 Cal. App.3d 593, 597 [224 Cal. Rptr. 885].)
In her argument that petitioner failed to establish the foundation necessary for the assertion of the psychotherapist-patient privilege, respondent correctly notes the absence of any declaration from petitioner which sets forth the specific psychotherapist-patient relationship. (Mahoney v. Superior Court, supra, 142 Cal. App.3d 937, 940.) Such specificity is not required for application of the much broader zone of privacy. Proceeding to subpoena the stated records pursuant to Code of Civil Procedure section 1985.3 is a tacit acknowledgment that the records are confidential. Moreover, in opposition to the motion to quash, counsel for real party declared that it was believed that petitioner was being treated by the center for alcohol or drug abuse; examination of that "medical care provider" was critically important. Counsel also referred to the records as "medical records."
Under the stated circumstances and in context of both the subpoena duces tecum and the ensuing motion to quash, the conclusion is inescapable that confidential communications were subjected to discovery, and the right of privacy was both asserted by petitioner and litigated by the parties. Should petitioner broaden her claim to include damages for other emotional distress or otherwise tender additional issues regarding her mental or emotional state, real party is not without recourse.[7] We only hold that upon the circumstances presented, disclosure of the records of Cedar Women's Center was erroneously ordered.

DISPOSITION
The trial court's denial of the motion to quash the subpoena violated petitioner's constitutional right of privacy and constitutes an abuse of discretion. A peremptory writ of mandate should issue. (Roberts v. Superior Court, supra, 9 Cal.3d 330, 336; Lewis v. Superior Court, supra, 118 Cal. App.2d 770, 775.)
Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 26, 1991, denying petitioner's motion to quash the subpoena entered in Kern County Superior Court action No. 213876, and to enter an order granting the motion to quash.
*1021 Except insofar as relief is granted hereinabove, the petition for writ of mandate, prohibition, or other appropriate relief is denied.
Costs are awarded to petitioner.
Martin, Acting P.J., and Dibiaso, J., concurred.
NOTES
[1] Although the court directed real party to prepare an order, the record contains no such order.
[2] By this remark, it appears that the court simply followed the general rule of discovery rather than implementing the more specific analysis required when issues of privilege and privacy are involved. (Compare Pacific Tel. & Tel. Co. v. Superior Court (1970) 2 Cal.3d 161, 172-173 [84 Cal. Rptr. 718, 465 P.2d 854]; In re Lifschutz (1970) 2 Cal.3d 415 at pp. 437-438 [85 Cal. Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) However, our conclusion regarding issues discussed in this opinion makes it unnecessary to consider the effect of the application of the incorrect standard.
[3] At oral argument the parties informed the court that petitioner has abandoned her claim for lost wages.
[4] In re Lifschutz, supra, 2 Cal.3d 415 involved a writ filed by a psychotherapist who had been jailed for refusing to disclose any information regarding a patient who had filed an action against another party alleging emotional distress damages. Although the superior court's initial order of disclosure was made on the basis that the psychotherapist-patient privilege (Evid. Code, § 1014) did not apply, our Supreme Court expanded its discussion to include the broader area of the federal constitutional right of privacy. In so doing, the court set forth the interrelationship of the statutory privilege and the constitutional right of privacy.
[5] Civil Code section 1431.2, which allows for such damages, provides as follows:

"(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.
".... .... .... .... .... .... ....
"[b] (2) For the purposes of this section, the term `non-economic damages' means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation."
[6] At oral argument, real party alluded to a right to obtain records of the Cedar Women's Center which may reflect petitioner's complaints of pain and suffering associated with physical injuries. Roberts v. Superior Court, supra, 9 Cal.3d 330 is silent on this issue; however, it appears that such information would be relevant since the issue of physicality has been tendered. (Cf. In re Lifschutz, supra, 2 Cal.3d 415, 431; Roberts v. Superior Court, supra, at p. 337.) In the context of the right of privacy, the fact that the records repose in the office of a therapist rather than a physician make the records no more sacrosanct, so long as physical condition discovery is involved.
[7] If request is made at trial to amend to conform to proof, upon objection, the court could either deny as being prejudicial given plaintiff's previous position or grant a continuance and reopen discovery.